UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WE THE PATRIOTS INC. ET AL, : | | CIVIL CASE NO. |
| Plaintiff, : | | 3:24-CV-1054 (JCH) |
| : | | |
| v. : | | |
| : | | |
| JOHN P. DOYLE, JR., : | | MARCH 2, 2026 |
| Defendant. : | | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 32)**

**I.      INTRODUCTION**

The plaintiffs, We the Patriots, Inc. ("We the Patriots"), Mathew Sherman, and Brandon Tischer, bring this suit against John P. Doyle, in his official capacity as the State's Attorney for New Haven, seeking to enjoin enforcement of the Public Act No. 23-53, "An Act Addressing Gun Violence" ("Act"). See generally Complaint (Doc. No. 1). They challenge specifically two provisions: Conn. Gen. Stat. Section 29-33(f), which restricts the number of commercial handguns during a sale, and Conn. Gen. Stat. Section 29-35(a)(2), which restricts the open carrying of firearms. Id. The defendant moved for Summary Judgment arguing, inter alia, that the court lacks subject matter jurisdiction over the plaintiff's claims. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Mot. SJ") (Doc. No. 32-1). The plaintiffs opposed the Motion. See Plaintiff's Memorandum in Opposition of Summary Judgment ("Pltf's Opp'n") (Doc. No. 36). The defendant replied in support of his Motion. See Defendant's Reply to Plaintiff's Opposition to their Motion for Summary Judgment ("Reply").  At the court's request (Doc. No. 38), the plaintiffs filed a Sur-reply (Doc. No. 39) ("Sur-reply") to the defendant's discussion of the recently decided case Frey v. City of New York, 157 F.4th 118 (2d Cir. 2025).

1

For the reasons stated below, the court grants the Motion.

## II. BACKGROUND

The Act in question took effect October 1, 2023, and introduced new restrictions on the carrying and commercial sale of firearms in Connecticut.  See Mot. SJ at 2.  Section 29-35(a)(2), the open carry provision, mandates that no person shall knowingly carry any firearm with the intent to display such firearm.  Id.  The law provides exceptions for people in their home, or business, or on their land.  Id.  There are additional exceptions for firearm training, hunting, and otherwise lawful conduct.  Id.  The Connecticut Legislature intended to address the fear and concern that may be prompted by open carry.  Id. at 3.

The Act also amended section 29-33(f) restricting the number of handguns a person may purchase.  Id.  The law prohibits the Commissioner of the Department of Emergency Services and Public Protection from "issuing more than three authorization numbers for sale at retail of a pistol or revolver to any transferee within a thirty-day period."  Id. at 3.  This sale limit only applies to handguns, not to long guns; and there are no limitations on private transactions or purchasing of parts, accessories, or ammunition.  Id. at 4.  There is also an exception for up to six transfers if an individual is a firearms instructor.  Id. at 5.  This amendment was enacted due to specific concerns from the Legislature about firearm trafficking and straw purchases.  Id.  Testimony provides support that the law is intended to curtail an illegal gun market, disarm criminals, and save lives.  Id.  Studies on the effectiveness of similar laws were presented by numerous experts.  Id.

Plaintiffs Mr. Tischer and Mr. Sherman are residents in Connecticut who are licensed to carry and purchase firearms.  See Local Rule 56(a)2 Statement of Facts in

Opposition to Summary Judgment Plaintiffs' Response to the Defendant's Joint Statement of Undisputed Facts at ¶ 1 ("Stat. of Facts") (Doc. No. 36-1). Mr. Sherman currently owns five pistols and regularly carries a concealed firearm outside of his home for personal safety. Id. at ¶¶ 45,46. Mr. Sherman would like to openly carry a firearm in Connecticut. Id. at ¶ 48. Mr. Sherman has never open carried in Connecticut and has never purchased more than three handguns in a year, nor does he have any intention to do either. Id. at ¶ 5. He seeks to stand up for the rights of those who do. Id. Mr. Sherman has never purchased more than three handguns in a month, and he would not be able to because he could not afford to do so. Id. at ¶ 6.

Mr. Tischer owns five handguns and also regularly carries concealed handguns for self-defense. Id. at ¶ 51 Mr. Tischer has never purchased more than three handguns in a month, nor has he ever attempted to, because it is expensive. Id. at ¶ 2. Currently, Mr. Tischer's annual salary from his business is approximately $2,000 dollars a year, and he has no other source of disposable income. Id. at ¶ 3.

We the Patriots identifies itself as a "charity" that is allegedly "dedicated to promoting and defending constitutional rights, including Second Amendment Rights, through education, outreach, and public interest litigation." Id. at ¶ 7. We the Patriots includes members who are adult residents of Connecticut. Id. at ¶ 60.

The plaintiffs brought suit against State's Attorney Doyle on June 17, 2024, who they allege "has responsibility for prosecuting violations of the State of Connecticut's criminal law." See Mot. SJ at 6. The plaintiffs' claim is pursuant to the Second Amendment of the Constitution. Id.

3

**III.   LEGAL STANDARD**

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

**IV.   DISCUSSION**

As an introductory matter, the individual plaintiffs and We the Patriots, must show the court has subject matter jurisdiction over their claims.  They have not done so.  Mr. Sherman and We the Patriots lack standing on all claims, and Mr. Tischer lacks standing to challenge the commercial sales limit.  Additionally, no plaintiff likely has standing to challenge the commercial sale limit because no plaintiff can establish

4

traceability to the defendant or that their injury would likely be redressed by the relief they seek.

  A. <u>Mr. Sherman lacks standing on all claims because he seeks to vindicate the rights of others, and can establish no actual or imminent injury</u>

"To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' " <u>See</u> <u>Silva v. Farrish</u>, 47 F.4th 78, 86 (2d Cir. 2022) (citing <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016)). Constitutional standing is designed to ensure the federal courts do not exceed their traditional authority. <u>Id</u>. Standing is an essential part of a plaintiff's case, and each element must be supported. <u>See</u> <u>Carter v. HealthPort Techs</u>., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

The plaintiffs have alleged a facial pre-enforcement challenge; a plaintiff only has standing when the "fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" <u>See</u> <u>Hedges v. Obama</u>, 724 F.3d 170, 196 (2d Cir. 2013). In the context of a pre-enforcement challenge, "a plaintiff must [have]: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "arguably proscribed by" the challenged regulation; and (3) that "there exists a credible threat of prosecution thereunder" that is "sufficiently imminent." <u>See</u> <u>Upsolve, Inc. v. James</u>, 155 F.4th 133, 139 (2d Cir. 2025). An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur. <u>See</u> <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2014). The claim of possible future injury

5

is not sufficient to confer standing.  See Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

To satisfy the injury in fact element, a plaintiff must have suffered an invasion of a "legally protected interest which is concrete and particularized . . . [which means] the injury must affect the plaintiff in a personal and individual way."  See Lujan, 504 U.S. at 560, 560 n.1.  A plaintiff may not sue to vindicate the statutory rights of others.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016), as revised (May 24, 2016); Singleton v. Wulff, 428 U.S. 106, 114 (1976) ("one may not claim standing . . . to vindicate the constitutional rights of some third party").

The defendant argues that Mr. Sherman has no standing.  See Mot. SJ at 11.  They argue that Mr. Sherman himself noted that, even before the open carry restrictions, he never carried firearms openly and publicly in Connecticut and, more importantly, that he never had any plans to carry his firearm even after the passage of the law.  See Exhibit F, p. 42.  Additionally, the defendant points to testimony of Mr. Sherman noting that he could not afford to purchase more than three handguns in a month.  See Exhibit F, p. 42-45.  Mr. Sherman stated he had no intention of carrying openly or purchasing more than three handguns a month.  Id.  Although he argues that he would if he had the ability and opportunity, it is undisputed that Mr. Sherman has not "purchased more than three handguns a month."  See Pltf's Opp'n at 14.[1]

---

[1] The plaintiff's cite no evidence to support these claims.  Unsupported allegations do not create a material issue of fact.  See Lindsay v. Cook, No. 3:19-cv-1486, 2021 WL 5827080, at *2 (D. Conn. Dec. 7, 2021).  Failure to provide specific citations to evidence may result in the court deemed admitted certain facts support by the evidence.  See Martin v. Town of Simsbury, 505 F. Supp. 3d 116, 125 (D. Conn. 2020), aff'd, No. 20-4266, 2022 WL 244084 (2d Cir. Jan. 27, 2022).

Additionally, the plaintiffs violated this court's local rule 56 by not citing in their brief to information on the record; there were paragraphs with no citations at all, simply assertions backed by nothing.  See Pltf's Opp'n at 7; Local Rules District Connecticut Rule 56.

Therefore, the defendant is correct that Mr. Sherman has no standing. In his deposition, Mr. Sherman testified that he never open carried before the challenged law was passed. See Exhibit F, p. 35-36. Despite that testimony, Mr. Sherman denied that Statement of Fact that he had no intention to open carry. Id. at p. 40. However, this testimony does not create an issue of fact as to the Statement: "Plaintiff Sherman has never open carried in Connecticut and has never purchased more than three handguns in a year, nor does he have any intention to do either. Rather, he seeks to "stand[ ] up" for the rights of those who do." See Stat. of Facts at ¶ 5.

While plaintiffs may dispute Mr. Sherman's intention, they cite to no facts. See Def's Reply at 2. Mr. Sherman himself testifies that he "never had any plans" or intention to carry his weapons openly. See Stat. of Facts at ¶ 5; Exhibit F. p. 40-41.

Additionally, Mr. Sherman testified he had no intentions or even the means to purchase more than three handguns in the proscribed period. See Stat. of Facts at ¶ 6; Exhibit F p. 42 ("I can't afford three handguns in a month."). These admissions fall far below even a "some day" intention, which was already rejected by the Supreme Court as a basis to confer standing, see Lujan, 504 U.S. at 564, let alone by the Connecticut Supreme Court. See Gay & Lesbian L. Students Ass'n at Univ. of Connecticut Sch. of L. v. Bd. of Trs., Univ. of Connecticut, 236 Conn. 453, 465 (1996) (demonstrating an injury in fact rather than a conjectural or hypothetical one is required for standing). Simply because Mr. Sherman desires to stand up for someone else's rights does not confer standing. See generally Kowalski v. Tesmer, 543 U.S. 125, 130 (2004). Because Mr. Sherman has not established any injury in fact, the court has no jurisdiction. It dismisses his claims.

  B. <u>Mr. Tischer lacks standing to challenge the handgun purchase limitation because his vague plans to buy a handgun, despite financial limits, are insufficient to establish actual or imminent injury</u>

  The defendant further argues that Mr. Tischer lacks standing because he has no plans to engage in conduct proscribed by the law, and that he could not do so even if he had plans. <u>See</u> Mot. SJ at 12. The defense acknowledges that Mr. Tischer does not need to be arrested or prosecuted to challenge this statute, but there must be an intention to engage in the conduct and a credible threat of prosecution. <u>See</u> <u>Goldstein v. Hochul</u>, 680 F. Supp. 3d 370, 386 (S.D.N.Y. 2023).

  Although Mr. Tischer has not "purchased more than three handguns a month," he argues he would if he had the ability and opportunity. <u>See</u> Pltf's Opp'n at 14. The plaintiffs argue that Mr. Tischer does have standing to challenge the open carry ban. <u>Id.</u> at 7. They argue that Mr. Tischer previously open carried in Connecticut and that the defendant does not dispute Mr. Tischer's standing to challenge the open carry ban. <u>Id.</u>

  Mr. Tischer lacks standing to challenge the three handgun commercial sales limit because he has no plans or ability to engage in the conduct prohibited. While he does not have to be prosecuted to challenge a statute, he must show an <u>intention</u> to engage in the conduct. <u>See</u> <u>Vitagliano v. Cnty. of Westchester</u>, No. 23-30, 71 F.4th 130, 136 (2d Cir. June 21, 2023) (quoting <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013). Mr. Tischer has never purchased more than three handguns in a month, nor even three firearms in a month, and when questioned he conceded, for him, it is prohibitively expensive to do so. <u>See</u> Stat. of Facts at ¶ 2; Exhibit G p. 23,35. Mr. Tischer was unable to identify which handguns he would purchase if the law did not prevent him. <u>See</u> Exhibit G. at p. 35-36. Mr. Tischer currently makes only $2,000 dollars annually. <u>See</u> Stat. of Facts at ¶ 3. He testified that he would purchase

handguns if he possessed the funds to do so, yet could not reasonably do so because that would involve spending almost his entire annual salary on handguns.  See Stat. of Facts at ¶¶ 2-4, Exhibit G. at p. 35, 36; Mot. SJ at 13.  See Carney v. Adams, 141 S. Ct. 493, 501-02 (2020) (plaintiff did not show he was able and ready for judicial vacancy, and therefore failed to establish standing).  Mr. Tischer's intention to buy more than three handguns in a month is contradicted by his means and thus those intentions are too ephemeral.  Mr. Tischer admits he has no plans to purchase more than three handguns.  See Stat. of Facts at ¶¶ 2-4, Exhibit G. at p. 35, 36.  Thus, he has not established standing.  The court dismisses his claim regarding the limits on commercial handgun sales, G.C.S. section 29-33(f).

> C. We the Patriots cannot establish organizational or associational standing

The defendant asserts that We the Patriots has no organizational or associational standing.  See Mot. SJ at 14.  The defendant further argues We the Patriots has no standing to bring a section 1983 under Second Circuit precedent.  Id. at 15.  Even if that were not the case, the defendant claims that We the Patriots cannot establish that its individual members would have standing.  Id.  The defendant argues that We the Patriots has no claim even under a theory of organizational standing because there is no traceable injury to the group.  Id. at 15-16.

The plaintiffs simply respond in a conclusory fashion that We the Patriots is an "association and should be afforded associational standing."  See Pltf's Opp'n at 7.  Further, they note that defending and litigating constitutional rights is part of its purpose and that some of the members are adult residents in Connecticut.  Id.

We the Patriots has no standing.  Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and

(2) associational standing. Under the organizational standing theory, "an association may have standing in its own right to seek judicial relief to itself and to vindicate whatever rights and immunities the association itself may enjoy." See Warth v. Seldin, 422 U.S. 490, 511 (1975).

To establish organizational standing, an organizational plaintiff "must meet the same standing test that applies to individuals." See Rodriguez v. Winski, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998)). We the Patriots must show (1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries. See Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). An organization suffers an injury when it can show a "perceptible impairment" to its core activities, resulting in "some perceptible opportunity cost" as a result of the alleged violation. Id. at 157. "[A]n organization lacks standing to sue in its own right as a result of injuries that are not fairly traceable to [it]." See Nat'l Rifle Assoc. of Am. v. Cuomo, 480 F. Supp.3d 404, 411 (N.D.N.Y. 2020) (quoting Doe v. Vill. of Mamaroneck, 462 F. Supp. 2d 520, 541 (S.D.N.Y. 2006) (citing Bennett v. Spear, 520 U.S. 154, 162 (1997))). "Abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. We the Patriots' allegations in the Complaint set forth no impairment to its core activities. See Complaint at ¶ 2; Stat. of Facts at ¶ 7. We the Patriots fails to allege what core activities it has been forced to limit or change due to the statutes. See, generally, Stat. of Facts at ¶ 7, 57. Any claims regarding "advocacy litigation" would only have fiscal costs. Spending money to advocate has been rejected as a theory of standing. See Food &

Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 394 (2024); Conn. Parents Union v. Wentzell, 462 F. Supp. 3d 167, 173 (D. Conn. 2020), aff'd, 8 F.4th 167 (2d Cir. 2021).

The Second Circuit unquestionably has held that, any group lacks associational standing to sue under section 1983 for violations of the rights of its members.  "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983."  See Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).  We the Patriots clearly lacks associational standing for claims under 1983.  Even if it were to somehow have associational standing, neither Mr. Tischer nor Mr. Sherman is noted to be a member.  See Stat. of Facts at ¶ 60.  We the Patriots cannot establish associational standing on their behalf.  See Summers v. Earth Island Inst., 555 U.S. 488, 498-99 (2009) (associational standing requires that a plaintiff identify by name at least one member with standing).  Thus, We the Patriots has no associational standing.  Therefore, We the Patriots cannot meet either associational or organizational standing, and all of its claims are dismissed.[2]

D.     Plaintiff's open carry claim is foreclosed by Frey v. City of N.Y.

The only party with standing on the open carry claim is Mr. Tischer.  He seeks to challenge the open carry statute.  However, that statute is within historical tradition and recent precedent.[3]  The Second Amendment provides that, "A well regulated Militia,

---

[2] Based on the above, no plaintiff has standing to sue in regard to the pre-enforcement challenge of the three handguns sale limit.  This court will not analyze standing further, but it appears to this court that all plaintiffs would fail to meet the other requirements for standing.  See, generally, Vitagliano v. Cty. of Westchester, 71 F.4th 130, 136 (2d Cir. 2023); Chevron Corp. v. Donziger, 833 F.3d 74, 121 (2d Cir. 2016) ("The traceability requirement of Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.").

[3] The court will only examine the Second Amendment claim regarding the open carry statute as no plaintiff has standing to challenge the commercial sale limitation.  See, supra, Part IV A-C.  However,

11

being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." See U.S. CONST. Amend. II.  "But that right . . . is 'not unlimited,' just as no other right in the Bill of Rights is unlimited."  See Antonyuk v. James, 120 F.4th 941, 961 (2d Cir. 2024) (quoting District of Columbia v. Heller, 554 U.S. 570, 595 (2008)).  The Second Amendment's right to carry firearms in self-defense is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  See New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2128 (2022) (quoting Heller, 554 U.S. at 626).  The Supreme Court instructs courts to now address whether modern firearm regulations are consistent with the Second Amendment's text and historical understanding.  See  Bruen, 142 S. Ct. 2111 at 2118.

As Bruen acknowledged, "[t]hroughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing . . . the manner of carry."  See Frey v. City of New York, 157 F.4th 118, 138 (2d Cir. 2025) (citing Bruen, 597 U.S. at 38).  The historical evidence demonstrates that States could lawfully eliminate one kind of public carry, open carry or concealed carry, as long as they left the other option open.  Id. at 139.  As Heller acknowledges, the majority of 19th century courts allowed statutory prohibitions on carrying concealed weapons.  These provide a backdrop of a strong history of regulation, and sometimes criminalization of, one manner of public carrying of a firearm, as long as the prohibition is not total.  Id.

---

as the Supreme Court recognized in Heller, there are categories of regulations that are presumptively lawful.  See Heller, 554 U.S. at 626-627  One such category concerns the commercial sale of arms, and there is therefore clear precedent supporting the lawfulness of limitations on commercial sale.  Id.

12

Recently, the Second Circuit ruled on the constitutionality of open carry restrictions. In Frey, the Second Circuit held that the New York open carry ban, is the "converse of many of these historical laws: it eliminates open carry while permitting concealed carry." Id. The Second Circuit explained that historical analogues do not need to be a twin, but only "relevantly similar." Id., citing Bruen, 598 U.S. at 29. New York's open carry ban burdens the right to a similar degree: it simply eliminates one kind of carry while leaving open the other option. Id. The reason it does so now is the same as the historical analogues: to regulate a mode of bearing arms that the legislature has deemed dangerous to society. Id., citing State v. Jumel, 13 La. Ann. 399, 400 (1858); see also State v. Chandler, 5 La. Ann. 489, 490 (1850) (holding that a law banning concealed carry was "absolutely necessary to counteract a vicious state of society . . . and to prevent bloodshed and assassinations committed upon unsuspecting persons"); State v. Reid, 1 Ala. 612, 617 (1840) (holding that "a law which is intended merely to promote personal security, and to put down lawless aggression and violence, and to that end inhibits the wearing of certain weapons, in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the constitution"). New York determined that open carry was the more dangerous mode of public carry, a decision strictly within the sphere of the legislative responsibility. See Frey, 157 F.4th at 139.

The Connecticut restrictions are practically identical. The purpose of the regulations is that common law recognized that open carry armed travel by its very

nature created concern in others.[4]  See, generally, Mot. SJ at 46-47.  The Connecticut Legislature intended to address the concern of others when people walking around with open carry guns intimidate others. See Testimony before the Connecticut Joint Committee on the Judiciary on An Act Addressing Gun Violence, P.A. No. 23-53 (March 5, 2023) quoting Elsa Peterson Obuchokowski (voter in Norwalk, CT) and Jonathan Perloe (Communications Director for CT Against Gun Violence).  Connecticut's open carry prohibition minimally burdens Second Amendment rights, and it leaves open an avenue of carrying a firearm – concealed carry – available to the public.  Similar to Frey, simply because the plaintiffs do not like the manner in which the state "allows public carry – concealed rather than open . . . does not mean that the enforcement against open carry is unconstitutional."  See Frey v. Nigrelli, 661 F. Supp. 3d 176, 199 (S.D.N.Y. 2023), aff'd and remanded sub nom., Frey v. City of New York, 157 F.4th 118 (2d Cir. 2025).  The Second Circuit holding in Frey is controlling.[5]  The Connecticut open carry statute is constitutional.  Accordingly, Summary Judgment is granted on the open carry provision for the defendant.

**V.    CONCLUSION**

No plaintiff has standing to assert jurisdiction on the three gun commercial sale provision.  Only Mr. Tischer has standing to challenge the open carry provision.

---

[4] See Testimony before the Connecticut Joint Committee on the Judiciary on An Act Addressing Gun Violence, P.A. No. 23-53 (March 5, 2023) quoting Elsa Peterson Obuchokowski (voter in Norwalk, CT) and Jonathan Perloe (Communications Director for CT Against Gun Violence).

[5] The plaintiffs' Sur-reply on the Frey case seeks to undercut its control here on the grounds that it is a Ruling on a Motion for Preliminary Injunction.  See Sur-reply at 1-2.  However, the court views the Frey opinion deciding the denial of the Motion for Preliminary Injunction as a matter of law, i.e. there is no legal basis for the claim for which the plaintiffs in Frey seek a preliminary injunction.  Even if this court is incorrect, and the Frey holding on New York's open carry ban is not controlling law, it is this court's decision that Connecticut has the authority under the Second Amendment to elect to prohibit one avenue of carrying a firearm – open carry – if Connecticut leaves open a different avenue of carrying a firearm – concealed carry.

However, his claim is precluded by <u>Frey</u>, and as a matter of law, his claim is without merit.  For the reasons stated above, the court grants the defendant's Motion for Summary Judgment (Doc. No. 32).

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of March, 2026.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge